Peter S. Selvin (SBN 94710)
  pselvin@ecjlaw.com
Elliot Chen (SBN 313941)
  echen@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for Plaintiff, Rexford Properties, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| REXFORD PROPERTIES LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>AGCS MARINE INSURANCE COMPANY, an Illinois corporation; ALLIANZ GLOBAL RISK US INSURANCE COMPANY an Illinois corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 1:23-CV-00276-ADA-SAB<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL**<br><br>*Action filed:*   *January 17, 2023* |

18225.1:10940263.1

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND DECLARATORY RELIEF

Plaintiff Rexford Properties LLC alleges as follows:

## THE PARTIES

1. At all times herein mentioned, plaintiff Rexford Properties LLC ("Rexford") is and was a California limited liability company organized pursuant to the laws of the State of California and with its principal place of business located in Los Angeles, California. Rexford owns the property and associated improvements thereon commonly known as the Island Waterpark located in Fresno, California.

2. AGCS Marine Insurance is an Illinois corporation authorized to conduct business and conducting business in this District. AGCS issued Policy No. MXI-93019673 ("The Policy") for the Policy Period November 1, 2020, through November 1, 2021, to Rexford, and it is Rexford's insurer with respect to the claim at issue in this case.

3. Allianz Global Risk US Insurance Company ("Global Risk") is an affiliate of AGCS and is an Illinois corporation authorized to conduct, and is conducting, business in this District. On information and belief, Global Risk and its employees were responsible for handling, and did handle, the claim at issue in this case. On further information and belief, in conducting its claims handling activities, Global Risk acted as an agent for AGCS.

4. Rexford is ignorant of the true names and capacities of Defendants sued as DOES 1–10, inclusive, and therefore sue these Defendants by such fictitious names and capacities. On information and belief, each of the Defendants fictitiously named as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby proximately and legally caused the injuries and damages to Rexford as alleged. Rexford will amend this Complaint to insert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

5. Rexford alleges that each of the defendants at all times mentioned herein, were the agents, servants, employees, successors-in-interest, assigns,

subsidiaries and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in -interest, assignment, subsidiary, and/or joint venture.

## SUBJECT MATTER JURISDICTION

6. This Court has subject matter jurisdiction over the present dispute under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship as between Rexford on the one hand and defendants on the other, and the amount in controversy exceeds $75,000.

## VENUE

7. Venue is proper in this District under 28 U.S.C. §1391 because the Policy pertains to insurance obligations covering the improvements and the loss of earnings and income from operation of the Island Waterpark WHICH in the City of Fresno, California.

## GENERAL ALLEGATIONS

8. Rexford is the owner of the Island Waterpark located at 6099 W. Barstow Ave, Fresno, California.

9. Defendant AGCS is an insurance company that issued the Policy to Rexford. The Policy provides first party all risk insurance coverage and loss of income/earnings coverage among other stated coverages. A true and correct copy of the Policy is attached hereto as Exhibit "A".

10. Defendant Global Risk employed the adjustor in respect to claim at issue and was responsible, by delegation from AGCS, for handling that claim. On information and belief, AGCS, as principal, delegated to its agent Global Risk the claims handling responsibilities in connection with the claim at issue. Accordingly, AGCS is vicariously liable for Global Risk's breach of the implied covenant of good faith and fair dealing.

11. In or about June 2021, the Island Waterpark (the "Island"), a waterpark theme park with water slides, lazy river, and wave pool among other attractions (the

"Attractions"), opened for business to the public for the 2021 operating season. Prior to opening and during operations, the Island's Attractions were inspected by independent QSI inspectors licensed by the State of California, CalOsha/DOSH and the Fresno Health Department.

12. On June 17, 2021, the Fresno County Health Department inspected the 580,000 gallon wave pool attraction known as "the Tide Pool". The Official Pool Inspection Report dated June 17, 2021 (the "June 17 Report"), indicated that the pool cleanliness, water levels were within compliance. Additionally, the June 17 Report specifically stated that the pool shell, finish and tiles are in good repair, that the bottom of the pool is "clearly visible" and that the pool site maintenance was in compliance with County regulations.

13. On June 20, 2021, an incident involving a patron at the Island (the "Incident") occurred in the Tidal Pool requiring CalOsha/DOSH notification (the "Incident") pursuant to applicable statutes and regulations. Upon receipt of the notification, CalOsha/DOSH instructed the Island via email, "You must cease operation of the [Tidal Pool] immediately and preserve it as is." CalOsha/DOSH gave additional instructions to the Island prohibiting the cleaning of the water or the shell of the Tidal Pool pending CalOsha/DOSH investigation of the site. Per those instructions, the Tidal Pool shell could not be swept or brushed and the wave equipment not run, thereby preventing normal aeration of the water and circulation of existing chemicals in the pool. The Island complied with these instructions from CalOsha/DOSH.

14. On June 21, 2021, the day immediately following the Incident, the Fresno County Health Department again inspected the Tidal Pool. The Official Pool Inspection Report for the June 21 inspection (the "June 21 Report") stated that the Health Department Inspector found the water to be clean, the bottom of the pool "clearly visible", the pool "healthful, safe and sanitary" and the "pool shell, finish, and tiles in good repair".

15. The CalOsha/DOSH inspection of the Tidal Pool concerning the Incident continued to and past June 25, 2021. During this investigation period, Rexford complied with CalOsha/DOSH instructions. Specifically, the Tidal Pool shell was not brushed, cleaned or scrubbed daily as required. Proper chemical levels were not maintained, circulation and aeration of the pool water did not occur. As a result, the condition of the 580,000 gallons of stagnant water and the wave pool surface deteriorated quickly. By June 25, 2021, black algae had grown on and into the surface of the wave pool shell.

16. The status and condition of the Tidal Pool on June 25, 2021, is set forth in the Fresno Health Department Official Pool Inspection Report of June 25, 2021 (the "June 25 Report"). The June 25 Report indicates the Tidal Pool shell and finish are out of compliance with Fresno County guidelines and that the Tidal Pool was unhealthy and unsanitary. The June 25 Report noted the presence of black algae and ordered Rexford, among other things, to "take all necessary measures to remove the black algae from the pool...in order to prevent algae growth in this pool in the future, you will need to repaint this pool in order to provide a smooth easily cleanable surface. If there are any damaged areas of the concrete, those areas will need to be repaired before the pool is repainted."

17. On June 25, 2021, the Tidal Pool water and shell was not in compliance with Health Department Code provisions. On June 25, 2021, the Tidal Pool needed to be drained, cleaned, scrubbed, stripped and repainted to eliminate the black algae and to ensure that the algae would not experience regrowth.

18. As a direct and proximate result of the Incident and CalOsha/DOSH instructions, the Tidal pool was damaged in a manner that required Rexford to drain the Tidal pool, to repeatedly scrub, strip and chemically treat the Tidal Pool shell to remove the algae growing on and into the Tidal Pool surface. After the scrubbing and stripping of the Tidal Pool surface, it was necessary to repaint the Tidal Pool shell as directed by the July 25 Report. Rexford diligently engaged in good faith in

remediation activities with the intent to reopen the Tidal Pool before the end of the 2021 operating season in September. The actual time to remediate the black algae and repaint the pool in accordance as directed by the June 25 Report took approximately two and one-half months (the "Remediation Period").

19. Importantly, before commencing the foregoing remediation efforts, representatives of Rexford spoke with a representative of defendants. In that communication, Rexford outlined the anticipated remediation efforts, including those set forth in paragraph 18, above. At no time during the exchange did defendants' representatives object to, question or reject Rexford undertaking the remediation efforts discussed above.

20. Rexford relied upon defendants' acquiescence in taking the remediation steps outlined in paragraph 18, above. Indeed, defendants' acknowledgement of coverage, without any representation of rights, was consistent with their acquiescence as to the proposed remediation steps Rexford proposed taking. By reason of, among others, the foregoing, defendants have waived any coverage defenses and are estopped from disputing the reasonableness of Rexford's remediation efforts.

21. The total cost to drain the wave pool, chemically treat, strip, and repaint the shell of the wave pool total was approximately $62,169.01. The invoices for this work were provided to defendants on or about September 23, 2021.

22. In addition, and as a further result of the Incident, compliance with CalOsha/DOSH instructions, and the closure of the Tidal Pool, Rexford suffered loss of income, earnings and revenue in the approximate amount of $1,000,000.

23. On or about July 27, 2021, Rexford filed a claim with defendants for reimbursement of the losses sustained as a result of the Incident and compliance with CalOsha/DOSH instructions during the investigation period (the "Claim").

24. On Friday November 12, 2021, Defendants acknowledged coverage for the Claim under the Policy without any reservation of rights.

25. Subsequently, and in response to defendants' request, Rexford provided its profit and loss accounting paperwork to assist defendants in evaluating Rexford's loss of income claim.

26. Although Rexford lost income for a two and one-half month period defendants agreed to pay for only three days of lost income for a total of $46,683.00, even though Rexford is entitled under the Policy to reimbursement for lost earnings covering the entire Remediation Period.

27. Defendants similarly failed to reimburse Rexford for the full measure of the repair and remediation expenses it incurred. Notwithstanding receipt of Rexford's invoices for the repair and remediation work in the amount of $62,169.01, defendants agreed to cover only $2,661.74.

## FIRST CAUSE OF ACTION

### (Breach of Contract Against AGCS and DOES 1-5)

28. Rexford repeats, realleges and incorporates by this reference paragraphs 1-27 as though set forth in full herein.

29. Notwithstanding their express acknowledgement of coverage under the Policy without any reservation of rights, defendants AGCS and Does 1-5 breached the Policy by refusing to reimburse Rexford for the repair, remediation and lost income amounts incurred as a result of the covered loss under the Policy.

30. As a direct result of defendants' breach of the Policy, Rexford has damaged in an amount exceeding $1,000,000 according to proof.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against Global Risk, AGCS and Does 6-10)

31. Rexford repeats, realleges and incorporates by this reference paragraphs 1 to 27, and 29 to 30, as set forth in full herein.

32. There is inherent in every policy of insurance an implied covenant of good faith and fair dealing, pursuant to which, among other things, the insurer is

required to put the interests of its insured at least on par with its own. This implied covenant also obligates the insurer to deal fairly with its insured and to not impede its insured's ability to access policy benefits.

33. Defendants AGCS, Global Risk and Does 6-10 breached the covenant of good faith and fair dealing by, among other things, unreasonably denying reimbursement to Rexford for the amounts undeniably due under the Policy; by unreasonably failing to investigate the claim; and by unreasonably failing to provide any reasonable explanation for their failure to reimburse all of Rexford's remediation expenses, loss of income notwithstanding their prior acknowledgments of coverage without reservation.

34. As a result of the bad faith conduct of said Defendants, Rexford has incurred financial losses in the form of unreimbursed damages/expenses and lost earnings/income arising from the Incident. In addition, and also as a consequence of defendants' bad faith conduct, Rexford has been required to bring this action to enforce its rights under the Policy. Rexford is entitled to recover as damages against defendants all of its repair and remediation costs, loss of income in the amount of at least $1,000,000 according to proof.

35. As a direct and proximate result of defendants' conduct, Rexford has been required to engage legal counsel, and incur attorney's fees. For this reason, Rexford is entitled to recover those attorney's fees against defendants pursuant to *Brandt vs. Superior Court*, 37 Cal.3d 813 (1985).

36. The above described conduct of the Defendants, and each of them has been and continues to be unreasonable, capricious and arbitrary and constitutes a breach of the covenant of good faith and fair dealing. The above described conduct was in conscious disregard of Rexford's rights, so as to justify an award of punitive damages.

## THIRD CAUSE OF ACTION

## (Declaratory Relief)

37. Rexford repeats, realleges and incorporates by this reference paragraphs 1 through 27 as though set forth in full herein.

38. A dispute has arisen between Rexford and defendants. Rexford contends that each defendant was required to reimburse Rexford for all remediation expenses incurred and for loss of income sustained as a result of the Incident and compliance with instructions during the CalOsha/DOSH investigation of the Incident.

39. The defendants have wrongfully refused to pay losses sustained by Rexford covered under the Policy.

40. As noted above, Rexford further claims that defendants have waived or are estopped from asserting any ground for refusing to reimburse under the Policy, because, among other things, Defendants acknowledged coverage without any reservation of rights to assert an exclusion, exception or otherwise deny coverage under the Policy and agreed to pay covered losses under the Policy.

41. Rexford alleges that defendants failed to timely or completely investigate the claim and wrongfully continue to refuse to reimburse Rexford for all remediation expenses and loss of income. Additionally, defendants have failed to pay amounts that defendants concede are due and owing to Rexford.

42. An actual controversy exists between Rexford and each defendant regarding construction, interpretation and defendants' duties under the Policy, and more particularly the amounts to which Rexford is entitled to as reimbursement under the Policy.

43. A declaratory judgment is necessary and appropriate to determine the rights and duties of the parties under the Policy, including Defendants' payment obligations under the Policy.

18225.1:10940263.1

9

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND DECLARATORY RELIEF

**PRAYER**

WHEREFORE, Rexford prays for judgment against each defendant as follows:

ON THE FIRST CAUSE OF ACTION:

1. For compensatory damages according to proof at trial but in excess of $1,00,000.00;

ON THE SECOND CAUSE OF ACTION:

2. For compensatory damages according to proof at trial but in excess of $1,000,000;

3. For payment of Rexford's *Brandt* fees; and

4. For punitive damages;

ON THE THIRD CAUSE OF ACTION:

5. For declaratory judgment that pursuant to the Policy defendants are obligated to pay all remediation expenses and loss of income as a result of the facts and circumstances alleged herein;

ON ALL CAUSES OF ACTION:

6. For pre-judgment interest on all sums due to Rexford;

7. For attorneys' fees and cost of suit herein; and

8. For such other further relief as the Court may deem just and proper.

DATED: July 31, 2023         ERVIN COHEN & JESSUP LLP
                             Peter S. Selvin
                             Elliot Chen

                             By: _____/s/ MSE_____
                             Peter S. Selvin
                             Attorneys for Plaintiff, Rexford Properties, LLC

**Demand for Jury Trial**

Rexford hereby demands on jury trial as to all matters to be tried.

DATED: July 31, 2023

ERVIN COHEN & JESSUP LLP
Peter S. Selvin
Elliot Chen

By: *[signature: PS.E.]*
Peter S. Selvin
Attorneys for Plaintiff, Rexford Properties, LLC

18225.1:10940263.1

11

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND DECLARATORY RELIEF