# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REXFORD PROPERTIES LLC, | Case No.  1:23-cv-00276-NODJ-SAB |
| Plaintiff, | ORDER RE: INFORMAL DISCOVERY DISPUTE |
| v. | (ECF No. 36) |
| AGCS MARINE INSURANCE COMPANY, et al., | |
| Defendants. | |

Currently before the Court is a discovery dispute that involves certain written discovery responses to Defendant AGCS Marine Insurance Company's ("Defendant") request for admissions and request for production of documents, and Plaintiff Rexford Properties LLC's ("Plaintiff") request for production of documents.  An informal videoconference was held on December 14, 2023 to address the dispute.  Counsel Elliot Chen appeared for Plaintiff, and counsel Jodi Swick, Ian Liu, and Daniella McDonagh appeared for Defendant.  The Court notes this matter was conducted off the record; however, the parties were afforded an opportunity to place the matter on the record and no party requested to do so.

## I.

## BACKGROUND

On January 17, 2023, Plaintiff filed this action in the Superior Court of the State of California, County of Fresno.  (ECF No. 1.)  On February 22, 2023, Defendant removed the

matter to the Eastern District of California.  (ECF No. 1.)  Plaintiff is proceeding on a first amended complaint filed on July 31, 2023 that alleges breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief against Defendants AGCS Marine Insurance Company and Allianz Global Risks US Insurance Company.  (First Am. Compl. ("FAC"), ECF No. 22.)

The non-expert discovery cutoff is April 1, 2024, and the action is set for trial on October 7, 2024.[1]  (ECF No. 15.)  On December 1, 2023, at the parties' request, the Court scheduled an informal hearing to be held on December 14, 2023, to discuss a discovery dispute.  (ECF No. 31.)  On December 13, 2023, the parties filed a joint informal discovery dispute letter brief outlining the parties' contentions regarding the dispute.  (Joint Informal Discovery Dispute Letter Brief ("Br."), ECF No. 36.)  The instant dispute concerns discovery requests served with Defendant's May 9, 2023 Requests for Admissions ("RFA") and Request for Production of Documents ("AGCS RFPD"), and Plaintiff's June 20, 2023 Request for Production of Documents ("Rexford RFD").  More specifically, Defendant takes issue with Plaintiff's responses to AGCS RFA Nos. 1-5 and responses to AGCS RFD Nos. 4, 5, 11, 13, and 15. Plaintiff takes issue with Defendant's responses to Rexford RFD 4-6, 8-10, and 15.  On December 14, 2023, counsel for the parties (as noted above) appeared before the Court by videoconference at the informal discovery dispute hearing.  (ECF No. 37.) The matter was conducted off-the-record.  The Court gave the parties the place any matter on the record at any time during the videoconference.  No party requested that the matter be placed on-the-record. Also, the parties agreed to conduct this matter through the Court's informal discovery procedure.

## II.

## LEGAL STANDARD

Pursuant to the undersigned's procedures for informal discovery dispute resolution, the parties may stipulate to allow for the resolution of discovery disputes outside of the formal Local

---

[1] The Court notes Defendants AGCS Marine Insurance Company and Allianz Global Risks US Insurance Company filed a motion for judgment on the pleadings on November 13, 2023 to be heard before the then-assigned District Judge.  (See ECF No. 28.)  Given Judge De Alba's recent appointment to the Ninth Circuit Court of Appeals, the case—and Defendants' pending motion—has been temporarily reassigned to No District Court Judge until a new district judge is appointed.  (ECF No. 32.)

1   Rule 251 procedures by conducting an informal telephonic conference.  Prior to conducting such

2   conference, the parties must agree to the informal process, agree to an entry of an order by the

3   Court after the conference, and agree to abide by such order.

4          Federal Rule of Civil Procedure ("Rule") 26 allows a party to obtain discovery

5   "regarding any nonprivileged matter that is relevant to any party's claim or defense and

6   proportional to the needs of the case, considering the importance of the issues at stake in the

7   action, the amount in controversy, the parties' relative access to relevant information, the parties'

8   resources, the importance of the discovery in resolving the issues, and whether the burden or

9   expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

10  "Information within this scope of discovery need not be admissible in evidence to be

11  discoverable." Fed. R. Civ. P. 26(b)(1).  "Evidence is relevant if: (a) it has any tendency to make

12  a fact more or less probable than it would be without the evidence; and (b) the fact is of

13  consequence in determining the action."  Fed. R. Evid. 401.

14         Rules 34 and 36 govern requests for production and requests for admissions, respectively.

15  Under these rules, a party may make a request related to any matter that may be inquired into

16  under Rule 26(b).  Fed. R. Civ. P. 34(a); Fed. R. Civ. P. 36(a) (request for admission may relate

17  to facts, the application of law to fact, or opinions about either; or the genuineness of any

18  described documents).

19         Rule 34 provides for the production or inspection/copying/testing/sampling of

20         (A) any designated documents or electronically stored information
           — including writings, drawings, graphs, charts, photographs,
21         sound recordings, images, and other data or data compilations —
           stored in any medium from which information can be obtained
22         either directly or, if necessary, after translation by the responding
           party into a reasonably usable form; or
23
           (B) any designated tangible things. . .
24
25  Fed. R. Civ. P. 34(a).  A request must describe with reasonable particularity each item or

26  category of items to be inspected; must specify a reasonable time, place, and manner for the

27  inspection and for performing the related acts; and may specify the form or forms in which

28  electronically stored information is to be produced.  Fed. R. Civ. P. 34(b)(1).  A party's response

to a request for production must — as to each item or category requested — either state that the production will occur or "state with specificity the grounds for objecting to the request, including the reasons. . . An objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest."  Fed. R. Civ. P. 34(b)(2)(B)–(C).

Rule 36 provides that if a matter in a request for admissions is not admitted,

> the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.  The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).  Alternatively, the party may object to the request by stating the grounds for the objection. Fed. R. Civ. P. 36(a)(5).  If the requesting party deems a response to a request for admissions deficient, she "may move to determine the sufficiency of an answer or objection.  Unless the court finds an objection justified, it must order that an answer be served. Fed. R. Civ. P. 36(a)(6).

### III.

### DISCUSSION

The Court first addresses Plaintiff's responses to Defendant's requests for admissions and requests for production of documents, then turns to Defendant's responses to Plaintiff's request for production of documents.

**A.    Defendant's Requests for Admissions**

Defendant's RFAs were served on Plaintiff on May 9, 2023. (Br. 1.)  Defendant contends Plaintiff fails to properly admit or deny RFA numbers 1 through 5.

1.    <u>RFA Number 1</u>

Defendant's RFA number 1 seeks Plaintiff's admission or denial "that AGCS Marine is the insurance company that issued the POLICY."  (Br. 1.)  In a supplemental response provided

on December 8, 2023, Plaintiff responded it:

> [O]bjects to the Request to the extent that it seeks information that is not in Rexford's possession, custody, or control. In particular, Rexford was provided with an insurance policy by its insurance broker indicating the entity AGCS Marine Insurance Company as the "Insurance Carrier." (See AGCS_002130). That same letter was signed by a representative of Allianz Global Corporate & Specialty and indicates that "AGCS North America has dedicated underwriting specialists, claims adjusters and risk consultants across the US and Canada with local decision-making authority." Subject to and without waiving the foregoing objections, Admit.

(Id.)   Defendant argues the RFA calls for an unqualified response that is consistent with Plaintiff's allegations in the FAC.   Specifically, Defendant cites Plaintiff's allegations that "Defendants AGCS Marine Insurance Company…issued Policy Number MXI-93019673…" (Compl. ¶ 3, ECF No. 1), and "Defendant AGCS is an insurance company that issued the Policy to Rexford" (FAC ¶ 9).   At the informal hearing held in this matter, Defendant further argued that, despite the information requested being memorialized as an express allegation by Plaintiff in its FAC, Defendant is hesitant to accept the proffered qualified admission given the potential that Plaintiff could amend allegations in its complaint prior to trial.

While the Court understands Defendant's hesitation, the Court does not find a need to compel Plaintiff to strip its admission of any and all objections because Plaintiff alleges the requested response in a filed pleading in this case.   Accordingly, Defendant's request for an order compelling an unqualified admission to RFA No. 1 is denied.

2.   RFA Nos. 2-5

Defendant's RFA number 2 seeks Plaintiff's admission or denial that Plaintiff "contend[s] that all physical damage to the wave pool was related to BLACK ALGAE CONTAMINATION."   Defendant's RFA number 3 relatedly seeks Plaintiff's admission or denial that Plaintiff "contend[s] that all physical damage to the wave pool was a consequence of BLACK ALGAE CONTAMINATION."   Defendant's RFA number 4 seeks Plaintiff's admission or denial that Plaintiff "contend[s] that all repairs to the wave pool were to remediate BLACK ALGAE CONTAMINATION," while Defendant's RFA number 5 seeks Plaintiff's

1  admission or denial that Plaintiff "contend[s] that all repairs to the wave pool were a

2  consequence of BLACK ALGAE CONTAMINATION."  Defendant defined "BLACK ALGAE

3  CONTAMINATION" as " 'black algae that grew on and into the surface of the wave pool shell'

4  as stated in paragraph 10 of [Plaintiff's] complaint."  (Br. 1.)

5         Plaintiff objected for vagueness and ambiguity of "physical damage" and "all repairs" to

6  the wave pool. Plaintiff stated it would interpret the requests:

7              to refer to the physical damage to the wave pool relating to the
             claim that it filed for harm resulting from the drowning incident
8              that occurred on June 20, 2021 and all subsequent consequences
             flowing therefrom. Subject to and without waiving the foregoing
9              objections, Rexford responds as follows: Rexford denies the
             request except that Rexford admits that it has filed a claim for
10             harm resulting from the drowning incident that occurred on June
             20, 2021 and all subsequent consequences flowing therefrom (Nos.
11             2 and 3) and that repairs were undertaken in order to obtain Fresno
             County Health Department approval to reopen the wave pool to the
12             public (Nos. 4 and 5).

13  (Br. 2.)

14         At the informal hearing held in this matter, Plaintiff also argued that through discovery,

15  Plaintiff has discovered that "black algae" is a catch-all term that does not have an accepted

16  scientific meaning.  In response, Defendant maintains that Plaintiff alleges the term "black

17  algae" in its complaint (see, e.g, Compl. ¶ 10) but emphasizes RFAs 2 through 5 are focused on

18  the "physical damage" and "all repairs to the wave pool" rather than the black algae, or,

19  concededly for the purpose of these Requests, the material on the surface of the wave pool.

20  Defendant underscores that it is merely seeking admission that the "physical damage" and

21  "repairs" to the wave pool were related to the material on the surface of the wave pool.  In

22  response, Plaintiff also noted RFAs 2 through 5 are framed in terms of what Plaintiff's

23  contentions are as opposed to what caused the physical damage, as clarified by Defendant's

24  counsel.

25         The Court finds the phrases "all physical damage to the wave pool" and "all repairs to the

26  wave pool" are neither vague nor ambiguous.  The Court agrees with Defendant that Plaintiff

27  reframed the requests in its current responses to RFAs 2 through 5 and failed to "specify the part

28  admitted or qualify or deny the rest."  Fed. R. Civ. P. 36(a)(4).  However, the Court finds

Plaintiff's refusal to admit to requests demanding an adoption of the term "black algae" is reasonable, given the issue is currently in dispute.   At the hearing, Plaintiff indicated a willingness to amend its responses with a better understanding of Defendant's targeted issues. Accordingly, the Defendant's request for an order compelling Plaintiff respond to RFA 2 through 5 is granted.   Plaintiff is ordered to amend its responses within thirty (30) days of the entry of this order.

**B.     Defendant's Requests for Production of Documents**

1.     <u>AGCS RFPD 4 & 5</u>

Defendant's   RFPD   4   and   5   request   "[a]ll   DOCUMENTS   (No.   4)   and COMMUNICATIONS (No. 5) from CalOSHA relating to Island Water Park from 2019 to present." (Br. 2.)

Defendant   argues   that   Plaintiff   has   produced   some   reports   and   communications responsive to RFPD 4 and 5 that are related to the June 20, 2021 contamination incident. However, Defendant contends Plaintiff has not produced any CalOSHA inspections and reports prior to nor any documents related to the June 10, 2021 CalOSHA Inspection and corresponding 13 reports, which predate the alleged loss and are referenced in its production. See REXFORD002060, 002101-002102, 002118-002119, 0002131-002132, 002162."   (Br. 2.) Plaintiff maintains it has produced the entire CalOSHA file related to the June 2021 tidal pool incident and object to the request to the extent it requests documents and communications beyond the June 2021 incident because documents from 2019 relating to rides other than the tidal pool have no bearing on the instant action.   Defendant maintains "prior CalOSHA inspections and reports are relevant and could discuss prior violations at the water park, including a history of black algae contamination, lack of maintenance, or ongoing compliance issues at the water park." (Br. 2.)  Plaintiff's counsel also proffered at the informal hearing that he is unsure if there are additional communications (AGCS RFPD 5) that have not been produced.

The Court finds AGCS RFPDs 4 and 5 are not incident-based requests limited to the June 10, 2021 tidal pool incident and agrees with Defendant that prior inspections and reports are relevant to the instant action.   Accordingly, the Court orders that within thirty (30) days of the

1  date of this order, Plaintiff shall produce all documents and communications from CalOSHA

2  related to Island Water Park from 2019 to present or, alternatively, provide an amended response

3  confirming all documents and communications requested from 2019 to present have been

4  produced.

5          2.     <u>AGCS RFPD 11</u>

6          Defendant's RFPD 11 requests "[a]ll DOCUMENTS that refer and relate to maintenance

7  logs for Island Waterpark rides, including but not limited to daily/weekly/monthly/yearly

8  maintenance logs, for the past 5 years." (Br. 3.)  Defendant thus requested the maintenance logs

9  for all rides from 2019 to 2023; however, Plaintiff only produced maintenance logs from 2019

10  and May 1, 2021 to October 1, 2021.

11         Defendant maintains the requested maintenance logs are relevant to both Island

12  Waterpark's potential pattern of black algae contamination in other rides and the facility's

13  recording practices related to any potential contamination.  Plaintiff contends Defendant agreed

14  to limit the request to maintenance logs for the 2021 season and maintains that maintenance logs

15  from 2018 and/or from after the loss in 2022 and 2023 have no possible bearing on the issues in

16  the case; nor do logs relating to rides other than the Tidal Pool.  (Br. 3.)

17         The Court finds the request for maintenance logs of every ride at the Island Waterpark is

18  overbroad, given the fact that not every ride at Island Waterpark has the potential for

19  contamination of black algae.  At the informal hearing held in this matter, Plaintiff's counsel

20  conceded she is willing to narrow this request to maintenance logs from May 2018 to May 2023

21  for every water ride at Island Waterpark.  Further, the Court finds the maintenance logs from

22  2022 and 2023 are relevant to the instant claim to show potential pattern and practice in the

23  Island Waterpark's recording and maintenance practices.  The Court therefore orders Plaintiff

24  provide an amended response to RFPD 11, limited to May 2018 to May 2023 maintenance logs

25  from Island Waterpark water rides within thirty (30) days of the entry of this order.

26         3.     <u>AGCS RFPD 13</u>

27         Defendant's RFPD 13 requests "[a]ll DOCUMENTS that refer or relate to Island

28  Waterpark's income, costs, revenue, sales or profits for the past 10 years." (Br. 3.)  Following meet

1    and confer efforts, Defendant agreed to limit RFPD 13 to profit and loss statements from 2018 to

2    2023 only.  The residual dispute is Plaintiff's refusal to produce the 2023 profit and loss statement.

3              Plaintiff maintains it produced statements from 2018 to 2022 and contends that financials

4    from 2023 are irrelevant because the policy at issue provides that " 'In determining a loss, 'we'

5    consider the experience of 'your' 'business' *before the loss* and the probable experience had no

6    loss occurred." (Br. 3.) (Emphasis in original.)  Defendant contends the statements are relevant

7    because Plaintiff seeks $1,000,000 in lost income due to closure of the Tidal Pool.  (Br. 3 (citing

8    FAC ¶¶ 30, 34).)  Defendant seeks to evaluate this loss of income claim, which Defendant

9    contends requires evaluating Plaintiff's income for a period of five years when the tidal pool was

10   operational.  At the hearing held in this matter, counsel for Defendant explained their business

11   interruption expert requested profit and loss statements for five years to calculate the business

12   interruption loss.  Defendant maintains that a profit and loss statement from 2023 that is closer in

13   time is more useful than a statement from 2017 in understanding what the actual losses are.

14   Counsel for Defendant emphasized waterpark experience from 2021 forward is different than it

15   was prior to the COVID-19 pandemic and therefore statements from 2022 and 2023 are more

16   reflective of what 2021 profits and losses would have been as opposed to data from 2017 before

17   the pandemic.

18             At this time, the Court finds Defendant's request for Plaintiff's 2023 profit and loss

19   statement is not relevant to calculating Plaintiff's loss of income claim.  On the facts currently

20   before the Court, the policy expressly states loss determinations are calculated from before the

21   loss occurred and therefore statements after the alleged loss in 2021 are not relevant.  Because

22   Plaintiff has already or is amenable to producing the 2022 profit and loss statement, Plaintiff

23   shall produce profit and loss statements from 2017 through and including 2022 in accordance

24   with RFPD 13 as amended.

25             4.    AGCS RFPD 15

26             Defendant's RFPD 15 requests "All DOCUMENTS that refer or relate to any insurance

27   claims YOU filed or submitted for the past 10 years." (Br. 15.)  Through meet and confer efforts,

28   Defendant agreed to limit this request to Plaintiff's insurance claims from 2018 through 2023.

1  Defendant contends Plaintiff has only produced some documents relating to a 2021
2  vandalism claim; however, Defendant contends Plaintiff submitted insurance claims regarding the
3  drowning incident that may provide relevant information as to the Tidal Pool and Water Park
4  conditions.   Further, Defendant believes Island Waterpark experienced black algae
5  contamination before the June 20, 2021 loss, and may have filed claims for related income loss
6  or remediation to another insurer.  In response, Plaintiff contends RFPD 15 is overbroad as
7  Plaintiff has multiple businesses, including managing apartment properties, in addition to the
8  waterpark. Plaintiff proffers it will contact its insurance broker to request documents pertaining
9  to first-party and third-party insurance claims submitted regarding the drowning incident if
10 Plaintiff agrees to limit the scope of RFPD 15.

11  The Court agrees with Plaintiff that the request is overbroad, even as amended.  The
12 Court therefore orders Defendant to limit RFPD 15 to claims related to black algae
13 contamination and the June 10, 2021 personal injury incident.  Accordingly, Defendant shall amend
14 RFPD 15 by December 15, 2023 and Plaintiff shall notify the Court of any objections to RFPD 15 as
15 amended no later than December 20, 2023.  Absent any objections, Plaintiff shall respond to RFPD
16 15 as amended no later than January 31, 2024.

17  **C.  Plaintiff's Requests for Production of Documents 4-6, 8-10, and 15**

18  Plaintiff's RFPD 4-6 and 8-10 request, in sum, "[a]ll writings which reflect, RELATE TO,
19 or EVIDENCE YOUR internal COMMUNICATIONS, including with any of YOUR affiliates,
20 concerning the claim. (No. 4). RFPs 5-6 seek communications with the Fresno Department of Health
21 and CalOSHA concerning remediation of the pool; RFPs 8-10 seek documents and communications
22 with AGCS's expert who provided a report regarding the remediation, concerning the incident,
23 claim, or pool remediation." Plaintiff's RFPD 15 requests "[a]ll documents which reflect, RELATE
24 TO or EVIDENCE any investigation YOU may have conducted from and after June, 2021 with
25 respect to the CLAIM."

26  Although Defendants originally responded they produced all non-privileged documents from
27 the claim file, Plaintiff identified pertinent communications which did not appear to have been
28 logged.  Plaintiff contends that most relevant communications are absent and is hesitant that all

non-privileged responsive documents have been produced.  Defendants provided an amended response to RFPDs 4-6, 8-10, and 15 on Wednesday, December 13, 2023 confirming the complete claim file has been produced.

Because Defendant has provided an amended response confirming all documents responsive to RFPDs 4-6, 8-10, and 15 have been produced, the Court denies Plaintiff's requests.

**IV.**

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Defendant's request to compel an unqualified admission to Request for Admission number 1 is DENIED;

2.  Defendant's request for an order compelling Plaintiff to respond to Requests for Admissions numbers 2 through 5 is GRANTED and Plaintiff is ordered to amend its responses within **thirty (30) days** of entry of this order;

3.  Plaintiff shall serve further responses and provide documents responsive to Request for Production numbers 4 and 5, as narrowed by the Court, within **thirty (30) days** of entry of this order;

4.  Plaintiff shall serve further responses and provide documents responsive to Request for Production number 11, as narrowed by the Court, within **thirty (30) days** of entry of this order;

5.  Plaintiff shall serve further responses and provide profit and loss statements from 2017 through and including 2022 responsive to Request for Production number 13, within **thirty (30) days** of entry of this order;

6.  Defendant shall amend RFPD 15 by **December 15, 2023** and Plaintiff shall notify the Court of any objections to RFPD 15 as amended **no later than December 20, 2023**. Absent any objections, Plaintiff shall respond to RFPD 15 as amended **no later than January 31, 2024**; and

///
///

11

7.    Plaintiff's request to compel further responses and documents responsive to Plaintiff's Requests for Production of Documents 4-6, 8-10, and 15 is DENIED.

IT IS SO ORDERED.

Dated:   **December 15, 2023**

_____
UNITED STATES MAGISTRATE JUDGE